Filed 12/19/13  A.J. v. L.W. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| A.T.J., | B243437 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EF001794) |
| v. | |
| L.A.W., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Dianna Gould-Saltman, Judge.  Affirmed.

A.T.J., in pro. per., for Plaintiff and Appellant.

L.A.W., in pro. per., for Defendant and Respondent.

_____

Appellant A.T.J. seeks review of family law orders governing custody of and his visitation with his and respondent L.A.W.'s children. The orders were issued by the trial court in February 2008, February 2011, and June 2012. We conclude the time is long past for appellate review of the 2008 and 2011 orders. We further conclude the contentions appellant makes with respect to the 2012 order lack merit. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Court's February 2008 Custody and Visitation Order*

Appellant and respondent were in a relationship for several years beginning in 1998. In April 2004, their first daughter (J.) was born. In August 2006, while pregnant with their second daughter (G.), respondent took J. and moved to Michigan, where her family resided. In September 2006, appellant obtained an order instructing respondent to return to California with J. Respondent returned, and G. was born in October 2006.[1] In December 2006, the court issued temporary child custody and visitation orders giving joint legal and physical custody of the girls to both parties and providing visitation for appellant.[2]

The parties stipulated to the appointment of a court evaluator who prepared an evaluation in September 2007 to assist the court in making the final determination. Appellant's ex-wife reported to the evaluator that appellant had been physically abusive to their seven children and mentally and emotionally abusive to her. The evaluator found that appellant had physically abused

---

[1] The parties attempted to reconcile, and lived together between September and December 2006. In December, respondent moved with the girls to a separate residence.

[2] See *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 559 (temporary custody order is interlocutory and "made pendente lite with the intent that it will be superseded by an award of custody after trial").

2

respondent on one occasion. The evaluator also found that appellant had been emotionally abusive toward respondent during their relationship, subjecting her to isolation, financial control, disparagement, threats, and harassment.[3] Appellant repeatedly asked respondent not only to surrender physical custody of the girls to him but to give up her parental rights altogether. Appellant also repeatedly indicated his intention to take the children out of the United States.

The evaluator concluded that respondent should be given primary custody of the girls and permission to move with them to Michigan to be near her family. The evaluator found that respondent had been their primary custodian, and that respondent was more likely to promote a positive relationship between the girls and the noncustodial parent than appellant would be if he were the primary custodian. The evaluator noted that if respondent moved to Michigan, her family could provide support for her and the children.[4] The evaluator investigated appellant's allegations that respondent's father, with whom she and the girls would be living in Michigan, was physically abusive or an alcoholic, and that respondent's brother had attempted to sexually abuse respondent when she was a girl; the evaluator concluded that neither man posed a threat to the children.

The court's February 27, 2008 order essentially followed the evaluator's recommendations, awarding respondent sole legal custody and primary physical

---

[3] While proceedings were pending, appellant threatened to send compromising pictures of respondent to her relatives and to file them with the court and later made good on his threat, sending such pictures to her relatives and attaching them to court-filed documents. Appellant also filed State Bar complaints against respondent's attorneys, made accusations of criminal conduct to the FBI and District Attorney's Office, and filed a lawsuit against the attorneys for libel, which resulted in a dismissal affirmed on appeal. (See *Johnson v. Schweitzer et al.* (June 13, 2011, B226641) [unpub.].)

[4] The evaluator found that respondent was in a financially unstable position. She was working part time for $10 per hour. She reported that appellant was in arrears thousands of dollars in child support.

custody of the two girls, then ages three and one, and permitting her to move with them to Michigan. The February 2008 order provided appellant monthly visitation in Michigan.[5] In addition, respondent was required to bring the girls to California once a year in the summer. The February 2008 order represented a final judgment in the custody dispute, and notice of entry was provided on March 10, 2008. Appellant did not appeal the February 2008 custody and visitation order.[6]

B. *Court's February 2011 Post-Judgment Custody and Visitation Order*

In November 2008, appellant filed an application for modification of custody and visitation. The application sought to re-litigate a number of matters resolved in the February 2008 order, including whether respondent should have been given primary physical custody and permitted to move to Michigan, whether respondent's male family members posed a threat to the girls, and whether appellant should be required to travel to Michigan for the majority of the visitation. The hearing took place in October and November 2010. In the interim, appellant filed reports with the Michigan State Police and Michigan's Children's Protective Services (CPS), claiming the children were being sexually abused.[7] In January

---

[5] Visitation was to consist of seven consecutive five-hour daily visits and a weekend overnight visit from Saturday morning at 8:00 a.m. to Sunday evening at 8:00 p.m. To obtain a visit, appellant was required to provide 30 days advance notice of his intent to travel to Michigan. Exchanges were to occur at the local police station. Appellant was also permitted to call J. on Mondays, Wednesdays, and Fridays between 6:00 and 7:00 p.m. Michigan time.

[6] Respondent's brief erroneously states that the order was appealed in case number B207233. That case was a writ proceeding. The writ was denied.

[7] CPS investigated the allegations and found them unsupported, as did the Michigan police.

4

2010, the court issued an interim order requiring appellant's visitation with the children to be monitored.[8]

At the hearing on his November 2008 application, appellant attempted to persuade the court that respondent was interfering with his visitation and communication with the girls. He contended she had not made the children available on one occasion when he was in Michigan and had failed to cooperate when he attempted to schedule another visit. He sought to blame her for the fact that the girls did not want to talk to him when he called. He also testified to statements and action of the children that caused him to believe they might have been sexually abused.

Respondent testified that she always made the girls available for appellant's calls. Respondent further testified she had refused a request for a visit when appellant sought to arrange it one day after G. was scheduled for a medical procedure and that on another occasion, an arranged monitored visit did not take place because appellant arrived three hours late and the monitoring facility was closed. Respondent testified that she had enrolled the girls in therapy for six months and that their psychologist had not indicated they had exhibited any signs of having been sexually abused.[9]

By order dated February 7, 2011, the court denied appellant's request for modification of custody, finding there had been no significant change of

---

[8]    Neither the hearing on this order nor the proceedings leading up to it are included in the record prepared by appellant. At some point, the court appointed an attorney to represent the children. The proceedings surrounding that decision are also absent from the record.

[9]    In January 2010, when J. was five and G. was three, a psychologist interviewed the two girls, presumably as the result of appellant's accusations, and prepared a report for the children's attorney which stated they had not made any disclosures of sexual abuse, but recommended therapy to "improve the children's ability to perceive, understand and report actual events."

circumstances that would require or permit modification of the February 2008 order. The court specifically found that the evidence did not support that the minors had been sexually abused or were at risk of sexual abuse. The court further found that respondent's failure to accommodate appellant's travel delays and failure to encourage the girls to communicate with him on the telephone were insufficient to support a finding of parental alienation. The court further found that appellant misused visitation "to develop evidence of maltreatment." The court concluded that due to the hostility between the parents, visitation and arrangements for visitation would "always be difficult."

The February 2011 order lifted the monitoring requirement imposed by the January 2010 interim order. It modified the original visitation schedule to replace the Saturday morning to Sunday evening weekend visitation with two five-hour weekend daytime visits. The court also relieved respondent of the responsibility of bringing the girls to California in the summer, instead permitting appellant to visit them for one week in the summer in Michigan under the same terms and conditions set forth in the February 2008 order for the California visits, as modified. The February 2011 order also declared appellant to be a vexatious litigant.[10] Appellant failed to appeal the order.

---

[10] The court found that appellant had "frustrated the policy of the law to promote settlement of litigation and/or to reduce the cost of litigation by encouraging cooperation between the parties and attorneys," and that he had been "imaginative in using every litigation and out-of-court technique against [r]espondent, her attorney, agents and even the sitting judicial officer." The court declared itself "impressed by the breadth of his imagination in finding ways to hamper [r]espondent," and found that respondent had incurred approximately $107,000 in attorney fees and costs, but that the record contained "no evidence as to [appellant's] ability to pay any attorney[] fees awarded to Respondent."

C.  *Court's June 2012 Post-Judgment Custody and Visitation Order*

In March 2012, appellant filed an application for modification of custody and visitation claiming changed circumstances.[11]  To support that contention, appellant pointed to the January 2010 psychologist's report and to respondent's testimony at the 2010 hearing that the children had undergone several months of therapy.  He continued to accuse respondent of instructing the girls to say they did not want to talk to him when he called.  He further contended that respondent had interfered with a March 2011 visit and cut short his Christmas 2011 visit.  He asked that he be given primary custody.  In the alternative, he requested modification of the February 2011 order to permit overnight weekend visitation in Michigan and to require respondent to pay his travel costs to Michigan; he also sought reinstatement of the portion of the February 2008 order requiring respondent to bring the children to California in the summer for visitation.

Respondent filed a declaration stating that the Christmas 2011 visit was shorter than five hours because she could not get the girls to the exchange location by 7:00 a.m. as appellant had unilaterally requested.  She admitted withholding the children from the second day of a two-day visit in 2011, claiming appellant had transported the children without buckling them into car seats and had refused to return them to the designated location.  Respondent further stated that appellant owed over $70,000 in child support.[12]

At the hearing on appellant's March 2012 application for modification, the court advised appellant of his responsibility to show a change of circumstances

---

[11]     Prior to filing the application, appellant sought and received permission to file as a vexatious litigant.

[12]     Respondent filed an income and expense declaration indicating that she was earning $100 to $200 per month, was receiving governmental food assistance, and had borrowed in excess of $75,000 from her family to pay attorney fees.

since the last order and warned him it could not address evidence previously considered by the court, reconsider the prior order, or review prior orders for error. Appellant testified that respondent interfered with a visit in March 2011, refusing to return the children for the second five-hour visit after the first was concluded.[13] He continued to blame respondent for the fact that when the girls were put on the telephone to talk to him, they would say they did not want to talk and hang up. Appellant stated he was "certain" G. was being sexually abused because her personality had "shifted."

Appellant also contended at the hearing that the visitation order should be modified to give him holiday visits. The court reminded him that he set the visitation schedule by giving 30 days' notice of his arrival in Michigan and could do so whenever he desired a holiday visit.

By order dated June 27, 2012, the court found that it was "not in the best interests of the [two girls] for a modification of visitation or custody to be ordered as requested by [appellant]," and that appellant had "failed to meet his threshold burden of showing a material change of circumstances sufficient to warrant . . . a change of custody." The court modified the prior visitation orders by permitting appellant to communicate with the girls through Skype every Monday, Wednesday, and Friday. The court also changed the location of the custodial exchange from the police station parking lot to the lobby of the hotel where appellant was staying.

Both parties were ordered to enroll in "OurFamilyWizard.com" (Family Wizard) to facilitate communication about the children, and were instructed to communicate with each other only through Family Wizard, except with respect to

---

[13]     This had been the subject of a prior hearing. By order dated April 18, 2011, the court directed respondent to pay one-half of appellant's travel costs, $900, for refusing to bring the girls to the second visit.

matters of an emergency nature concerning the health, safety, or welfare of the children. The parties were further instructed to permit the children's attorney access to their Family Wizard account. Appellant subsequently sought "clarification" of the court's order, specifically objecting to the requirement that he and respondent communicate through Family Wizard and permit the children's attorney access to their communications. The court modified the order in certain respects, but denied appellant's request to eliminate the Family Wizard requirements. Appellant noticed an appeal on August 21, 2012.

## DISCUSSION

A. *Appellant's Attempts to Raise Issues Pertaining to the February 2008 and February 2011 Custody and Visitation Orders Are Foreclosed*

Much of appellant's brief is directed to matters addressed in the February 2008 and February 2011 orders. The February 2008 custody and visitation order gave respondent primary custody of the children and permitted her to move with them to Michigan. The order, entered after a hearing and resolving all custody issues raised by the parties, was an appealable final judgment. (See *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1088-1089, fn. 2 [order after hearing granting joint legal custody to both parties and primary physical custody to mother constituted final judicial custody determination]; *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1378 [order providing parents would share joint legal custody and that father's physical custody right would gradually increase over time constituted appealable final judgment].) The February 2011 custody and visitation order was similarly appealable as an order after judgment. (See Code Civ. Proc., § 904.1, subd. (a)(2); *Enrique M. v. Angelina V.*, *supra*, 121 Cal.App.4th at pp. 1376-1378 [order on father's request that custody order be modified constituted appealable order after judgment]; *In re Marriage of Lasich* (2002) 99 Cal.App.4th

9

702, 705, fn. 1, disapproved on other grounds by *In re Marriage of LaMusga*, *supra*, 32 Cal.4th 1072 [trial court's ruling on mother's request for modification of judgment as to custody and visitation was "appealable as an order made after a judgment"].)

"""If a judgment or order is appealable, an aggrieved party must file a timely appeal or forever lose the opportunity to obtain appellate review.""" (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 304, italics omitted, quoting *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.) "Appellate courts have no jurisdiction to review appealable judgments or orders from which a timely appeal was not taken." (Hogoboom and King, Cal. Practice Guide: Family Law (The Rutter Group 2013) ¶ 16.265, pp. 16-84, italics omitted; accord, *Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 693.) Appellant appealed neither the February 2008 nor the February 2011 order, and both have become final. As we may not review those orders for legal defects, we turn to the issues raised with respect to the June 2012 order.

B. *Appellant Failed to Establish that Changed Circumstances Required a Change of Custody*

With respect to the June 2012 custody and visitation order from which appellant timely appealed, he first contends the trial court abused its discretion by failing to consider the evidence of sexual abuse or to take into account the evidence that respondent interfered with his visitation.

"In making an initial permanent custody determination, the trial court 'must look to all the circumstances bearing on the best interest of the minor child. [Citation.]'" (*Lester v. Lennane, supra,* 84 Cal.App.4th at p. 591, italics omitted.) In determining best interest, the Family Code lists specific factors that must be considered "among . . . others," including "[t]he health, safety, and welfare of the

child"; "[a]ny history of abuse by one parent . . . against . . . [a]ny child to whom he or she is related . . . [or] [t]he other parent"; "[t]he nature and amount of contact with both parents" (Fam. Code, § 3011, subds. (a), (b)(1), (b)(2) & (c)); and "which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent" (*id*., § 3040, subd. (a)(1)).  Here, the court made a final custody determination in February 2008, having considered these factors and others.

"Once the trial court has entered a final or permanent custody order reflecting that a particular custodial arrangement is in the best interest of the child, 'the paramount need for continuity and stability in custody arrangements -- and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker -- weigh heavily in favor of maintaining' that custody arrangement." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956; see *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32-33.)  The court has no obligation to reexamine past custody decisions; to the contrary, the court should "preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest," thus "foster[ing] the dual goals of judicial economy and protecting stable custody arrangements." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535.)  Put simply, "a child should not be removed from prior custody of one parent and given to the other '"unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change."'"  (*In re Marriage of Burgess*, *supra*, at p. 38, quoting *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730.)

This rule places a weighty burden on the noncustodial parent seeking to persuade the court that a change in stable custody, lawfully acquired and maintained for a significant period, is in the child's best interest:  "Under the

changed circumstance rule, custody modification is appropriate only if the parent seeking modification demonstrates 'a significant change of circumstances . . . .'" (*In re Marriage of Brown & Yana*, *supra*, 37 Cal.4th at p. 956; see *Burchard v. Garay*, *supra*, 42 Cal.3d at p. 536.)

The court found that appellant did not meet his burden of demonstrating a significant change of circumstances to justify a change in the custody arrangement put in place more than four years earlier and upheld in February 2011. We review the trial court's order denying modification of custody for abuse of discretion. (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 32; *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) Under that standard, "reversal is warranted only if there is no reasonable basis upon which the trial court could conclude that its decision advanced the best interests of the child[ren]." (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610.) "'An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the trier of facts. Only upon a . . . showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal. Where minds may reasonably differ, it is the trial judge's discretion and not that of the appellate court which must control.'" (*In re Marriage of Lewin* (1986) 186 Cal.App.3d 1482, 1492.)

Application of the changed circumstances rule "requires that one identify a prior custody decision based upon circumstances then existing which rendered the decision in the best interest of the child. The court can then inquire whether alleged new circumstances represent a significant change from preexisting circumstances, requiring a reevaluation of the child's custody." (*Burchard v. Garay*, *supra*, 42 Cal.3d at p. 534.) The record reflects that the original custody order was based on the evidence, inter alia, that appellant was emotionally abusive toward respondent and determined to sever respondent's relationship with the children, although she had been their primary custodian and caregiver. Appellant

12

presented no evidence in support of his March 2012 application to suggest that these essential facts had changed.  To the contrary, the evidence established that appellant had continued a pattern of harassment, using the legal, criminal, and child welfare systems to force respondent to repeatedly defend her right to custody and her fitness to be a parent.  In its February 2011 order, the trial court concluded that appellant's primary focus in exercising his visitation rights had been to attempt to develop evidence against respondent.  The evidence at the most recent hearing showed this pattern had continued.  For example, appellant chose an unworkable schedule for the Christmas 2011 visit and then sought to blame respondent for failing to meet it.  He also continued to use his visitation time to scrutinize the girls' words and actions in an attempt to develop evidence to be used against respondent.  The record before the court demonstrated no meaningful change in circumstances, and thus, the court did not abuse its discretion in denying appellant's request for a change in custody.

Appellant contends the court erred in failing to consider the January 2010 psychologist's report which he claims "indicate[d] possible sexual abuse."  The record reflects that in connection with the original custody hearing, the evaluator and the court carefully considered whether respondent's close male relatives posed any risk of abusing the girls and concluded they did not.  The issue of sexual abuse was reexamined in connection with appellant's November 2008 application for a change of custody.  In the February 2011 order, the court specifically set forth its finding that there was no evidence to support that the minors were sexually abused or at risk of sexual abuse.  The trial court in resolving appellant's 2012 application for modification rightfully rejected appellant's attempt to establish changed

13

circumstances through evidence repeatedly and thoroughly examined and found wanting.[14]

Appellant contends the court "ignor[ed]" respondent's "history" of interference with visitation and communication. "Conduct by a custodial parent designed to frustrate visitation and communication may be grounds for changing custody." (*Burchard v. Garay*, *supra*, 42 Cal.3d at p. 541.) However, appellant describes only three visits allegedly interfered with by respondent since 2008, including the June 2010 visit which was cancelled because appellant did not arrive at the monitoring facility before it closed and the Christmas 2011 visit, when appellant insisted that the children be brought to his location by 7:00 a.m. Neither of these occasions indicates a design by respondent to frustrate visitation. To the contrary, it was appellant's failure to make reasonable travel arrangements that created these situations. Only the circumstances surrounding the March 2011 visit, when respondent refused to bring the children for the second of a two-day visit supports that respondent ever interfered with visitation. A single instance of interference with visitation is not a basis for changing custody.

C. *Appellant Failed to Establish that the Best Interest of the Children Required a Change of Visitation*

Before we address the specific modifications to the visitation schedule to which appellant claims entitlement, we address his contention that the court erroneously applied the wrong standard. Visitation schedules may be modified

---

[14] Appellant contends the children's participation in therapy represented proof that their psychological and emotional well-being has been negatively affected by the custodial arrangements. Respondent complied with the psychologist's recommendation that the children undergo a period of therapy in order to ensure that there had been no sexual abuse. We reject appellant's attempt to turn her reasonable decision into a sign of unfitness.

14

based on the best interest of the children without proof of the significant change of circumstances required to modify custody. (See, e.g., *In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1072 ["[T]he changed circumstance rule does not apply when a parent requests only a change in the parenting or visitation arrangement not amounting to a change from joint custody to sole custody, or vice versa. Instead, the trial court considers a request to change the parenting or visitation arrangement under the best interests of the child standard."]; accord, *Enrique M. v. Angelina V.*, *supra*, 121 Cal.App.4th at pp. 1378-1382 [court erred in applying changed circumstance rule to request for change in visitation].) An appellate court does not generally interfere with a trial court's discretionary determination that a change in visitation is not in the best interest of the child; however, a discretionary visitation order may be reversed if the trial court applied "improper criteria or incorrect legal assumptions . . . ." (*Mark T. v. Jamie R.* (2011) 194 Cal.App.4th 1115, 1124-1125.) "If the record affirmatively shows the court misunderstood the proper scope of its discretion, remand . . . is required to permit that court to exercise informed discretion with awareness of the full scope of its discretion and applicable law." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 16, italics omitted.)

Nothing in the record below suggests the court misunderstood the correct standard when considering appellant's request for modification of the visitation schedule. In discussing the basis for the denial of appellant's request for a change in custody, the court's order stated that appellant failed to meet his threshold burden of showing "a material change of circumstances." However, in discussing the basis for the denial of the requested changes in visitation, the court referred only to the "best interests of the . . . minors" standard. Moreover, the court's actions reflect that the court understood the distinction. Having found no change of circumstances sufficient to justify a change in the girls' custody, the court

15

nevertheless modified the prior visitation order in two respects: requiring respondent to connect to Skype so that appellant and the girls could see each other during telephone communications, and changing the place of the exchange to accommodate appellant. Clearly, the court understood that a significant change in circumstances was not required to support modifications to visitation orders and applied the correct standard for all of its determinations.

Appellant claims the court abused its discretion in refusing to modify the visitation schedule to allow overnight visits. An order of the trial court is presumed correct and the burden is on the appellant to show that the court erred. (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.) An appellant defaults if he or she "ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed." (*Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 302.) If the record on appeal does not contain all of the documents or other evidence submitted to the trial court, a reviewing court will "decline to find error on a silent record, and thus infer that substantial evidence" supports the trial court's findings. (*Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 955.) In January 2010, the court restricted appellant to monitored visitation. The February 2011 order lifted the monitoring restriction, but continued to restrict appellant's time with the children, limiting him to daytime visits. Appellant did not include in the record any of the hearings that preceded the court's decision to impose the monitoring requirement or any of the evidence that led to its modification. Accordingly, we must presume that the conditions which led to the currently operative order remain, and that the court did not abuse its discretion in refusing to liberalize visitation.

Appellant further contends the court abused its discretion by refusing to set out a clear holiday and summer schedule, and by rejecting his request that

16

respondent bring the girls to California at her expense in the summer or contribute to the cost of his travel. With respect to holiday and summer visits, as the court pointed out, appellant controls the dates of his visitation based on when he gives notice. With respect to the expense of travel and the fact that all visitation is to take place in Michigan, we observe that the children are very young and require an adult companion to travel. Accordingly, the cost of transporting them to California would be three times the cost of transporting appellant to Michigan. The court could reasonably take the difference in travel expenses into account in determining the place of visitation, as well as the burden on young children of making a lengthy trip. With respect to payment for transportation, the evidence is undisputed that respondent earns very little and is surviving on the charity of her family and a small amount of government support.[15] The court could reasonably conclude she was unable to contribute to travel expenses.

D. *The Order Requiring Appellant and Respondent to Communicate Through Family Wizard and Allow the Children's Attorney Access to Their Communications Does Not Implicate Appellant's Constitutional Rights*

Finally, appellant contends the court infringed his "first amendment right to privacy" by allowing the minors' counsel access to his Family Wizard communications with respondent. Family Wizard is a Web site which permits parents to share information, such as their children's activity schedules, by posting on a calendar available for viewing by both parties. It also provides a message board for direct email communication between parents. When parents use Family Wizard, the court has a record to assist it in determining whether parents are

---

[15]     Although there is no evidence of appellant's current financial status in the record, we note that he has in the past operated several businesses that were financially successful, including a chiropractic practice and a handyman company.

17

cooperating by timely sharing information about the children and whether they are communicating civilly.  (See *Harris v. Hamilton* (2013) 141 Conn.App. 208 [61 A.3d 542, 551-552]; *In re Marriage of Golden and Friedman* (2012 Ill.App.) 974 N.E.2d 927, 929.)  The record reflects that appellant and respondent have had difficulty communicating civilly in the past, and that appellant in particular uses written communications to denigrate respondent and her family.  At the same time, the parties must communicate with each other to set up visitation.  The court's decision to require their communications to be monitored by a third-party was reasonably designed to lessen the hostility and discourteousness.  (See *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961 ["'Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest.'"].)  Appellant can avoid any privacy concerns by restricting his communications with respondent to matters concerning the children and his visitation with them.

## DISPOSITION

The order is affirmed.  Respondent is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.


19