[No. A095806. First Dist., Div. Four. May 17, 2002.]

ALAN SWAIN et al., Plaintiffs and Appellants, v.
CALIFORNIA CASUALTY INSURANCE CO., Defendant and
Respondent.

## COUNSEL

Albert Gustav Stoll for Plaintiffs and Appellants.

John Leland Williams and Lawrence M. Guslani for Defendant and Respondent.

Michael A. Barnes for Allstate Insurance Company as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**SEPULVEDA, J.**—Plaintiffs Alan C. Swain and Aleyda A. Swain brought this action seeking damages based upon the conduct of defendant California Casualty Insurance Co. (CCIC) in denying that it owed a duty to defend or indemnify plaintiffs, under a policy of comprehensive general liability insurance, for claims against plaintiffs sounding in wrongful eviction. CCIC sought summary judgment on the ground that the events underlying the claim against plaintiffs were not an "occurrence" as defined in the policy. The trial court granted the motion, and plaintiffs appealed from the resulting judgment. We find no error, and affirm.

### BACKGROUND

On September 9, 1997, plaintiffs completed purchase of a property on Cedar Street in Berkeley, together with a neighboring property. About two weeks prior to closing, plaintiffs purchased insurance policies from CCIC covering the two properties. One of these was a homeowners policy providing coverage for "personal liability." It is this coverage the applicability of which is at issue in this proceeding. (See pt. II, *post.*)

The Cedar Street house had been occupied by Steve and Jamie Chin, and their children, for nearly six and one-half years. On the day after closing, plaintiff Alan Swain wrote to the Chins, stating, "Since we are now the legal owners of the property we need to give you written notice of our intent to occupy the property in 30 days. [¶] . . . We have family that is waiting to move in to the house as soon as you move out . . . ." It was undisputed for purposes of summary judgment that this letter constituted a 30-day notice to quit. The Chins thereafter vacated the premises. Plaintiffs did not then move into the property but, in January 1998, rented it to another tenant.

The Chins commenced an action against plaintiffs, apparently filing their original complaint in July 1998. They filed and served a first amended complaint in October 1998, alleging fraud, negligent misrepresentation, "wrongful eviction" in violation of the Berkeley rent stabilization ordinance, violation of Civil Code section 1947.10, common law wrongful eviction, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. All causes of action contained or incorporated allegations that, as a result of plaintiffs' conduct, the Chins "were hurt in their health, strength, and activity, sustaining injuries to their bodies, shock to their nervous systems, and harm to their psyches; including damages sustained for emotional and psychological distress . . . caus[ing] each Plaintiff[] physical, nervous, and psychological pain, suffering and anguish."

Plaintiffs tendered the defense of the action to Allstate Insurance Co., which accepted it under a reservation of rights predicated at least in part on the fact that its policy had not taken effect until March 1998. Allstate engaged attorneys to represent plaintiffs, and these attorneys tendered the defense to CCIC on November 12, 1998. CCIC briefly accepted the defense under a reservation of rights. On December 4, 1998, CCIC wrote that it had concluded it had "no duty to defend or indemnify your clients in this situation." Its primary stated reason was that the events alleged in the Chin complaint did not constitute an "occurrence" under CCIC's policy.

The Chin complaint was mediated in April 1999, resulting in an agreement by plaintiffs to pay the Chins $125,000. Allstate apparently offered to contribute $25,000 of this amount in exchange for a release by plaintiffs from any further obligations. Plaintiffs apparently declined to furnish such a release.

Plaintiffs brought this action on January 11, 2000, against Allstate, CCIC, certain attorneys, and an insurance agent or broker. The operative allegations against CCIC were that by denying coverage it had "refused to perform and pay benefits contracted for," and breached the covenant of good faith and fair dealing. CCIC filed a cross-complaint seeking declaratory relief as to its coverage obligations.

CCIC moved for summary judgment on the ground that there was no triable issue of fact in that the Chins' claims did not rest upon an "occurrence" as defined in the policy. The trial court filed an order granting the motion. CCIC gave "notice of entry of judgment," attaching the order. Sixty days later plaintiffs filed a notice of appeal.

## I.

### *Appealability*

At the outset we note two potential imperfections in the "judgment" from which the present appeal is taken. Because such matters go to our jurisdiction, we must consider them even though they are raised by no party.

On its face the trial court's order granting summary judgment is arguably ineffective as a judgment. It states in relevant part, "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that said Motion for Summary Judgment is granted and that judgment shall be entered forthwith in favor of

CALIFORNIA CASUALTY INSURANCE COMPANY and against plaintiffs ALAN C. SWAIN and ALEYDA A. SWAIN." (Boldface in original.)

Although the boldfaced words suggest an intention that the order operate as a judgment, three other features point in the opposite direction: First, there is no express declaration of the ultimate rights of the parties, such as that "plaintiffs shall take nothing," or "the action is dismissed." Second, the phrase "judgment shall be entered forthwith" may be understood to contemplate a further, separate instrument—although it may be only a superfluous prediction of the clerical act of entry. Third, there is no mention of CCIC's cross-complaint, which so far as this record shows, remained pending. (See *Holt v. Booth* (1991) 1 Cal.App.4th 1074, 1081 [2 Cal.Rptr.2d 727], quoting *Tsarnas v. Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629] [" '[j]udgment rendered on a complaint alone, unaccompanied by judgment on a pending cross-complaint, is not a final judgment and appeal from it may be dismissed on motion' "].)

Insofar as these features pose an obstacle to appellate jurisdiction, however, it is within our power to correct them. Thus, because the trial court clearly intended to finally dispose of plaintiffs' complaint against CCIC, we can amend the order to make it an effective judgment. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 112, p. 177; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶¶ 2:67, 2:69.1, pp. 2-33 to 2-34.) Similarly, because the order on summary judgment effectively disposed of the issues raised by CCIC's cross-complaint, we can amend it to do explicitly what it did only implicitly. (See Eisenberg, *supra*, ¶¶ 2:70, 2:73 at pp. 2-34 to 2-35; *Holt v. Booth, supra*, 1 Cal.App.4th at p. 1081, quoting *Tsarnas v. Bailery, supra*, 179 Cal.App.2d at p. 337 [" '[T]he [appellate] court may, in its discretion, where the intention of the trial court was clear, order judgment rather than send the case back for the performance of that act.' "].)

Accordingly we will direct amendment of the order granting summary judgment to declare that (1) judgment is entered nunc pro tunc on the complaint in favor of defendant CCIC, such that plaintiffs shall take nothing and their action is dismissed; and (2) judgment is entered on the cross-complaint in favor of defendant CCIC, such that the insurance policy described in said cross-complaint is declared not to afford coverage to plaintiffs and not to create a duty to defend or indemnify them with respect to the losses tendered by them in connection with the Chin action.

As so amended we deem the order an appealable judgment and proceed to the merits.

## II.

### *"Occurrence"*

"[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. [Citation.] . . . '[T]he carrier must defend a suit which potentially seeks damages within the coverage of the policy.' [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify . . . ." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792], italics omitted.) The duty to defend " 'may exist even where coverage is in doubt and ultimately does not develop.' [Citation.]" (*Saylin v. California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 263 [224 Cal.Rptr. 493].)

For the insured to establish a duty to defend, he or she "must prove the existence of a potential for coverage," while for the insurer to negate the existence of such a duty, it "must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153], italics omitted.) An insurer's duty to defend is determined in the first instance by comparing the allegations of the complaint with the terms of the policy. (*Horace Mann Ins. Co. v. Barbara B.*, *supra*, 4 Cal.4th at p. 1081.)

We agree with the trial court that the claims asserted by the Chins cannot be properly conceived as having arisen, even potentially, from an "occurrence" as defined in the CCIC policy. CCIC's basic undertaking as stated in the policy is to defend and indemnify plaintiffs "[i]f a claim is made or a suit is brought . . . for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies . . . ." (Boldface in original.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: [¶] a. **Bodily injury**; or [¶] b. **Property damage**."

The key term here is "accident." CCIC successfully contended below that plaintiffs' eviction of the Chins could not constitute an "accident" because it entailed "intentional conduct." Plaintiffs contend that this premise is defeated because the Chin complaint included a cause of action for simple negligence, and because Jamie Chin testified in deposition that contractors hired by plaintiffs worked into the early hours of the morning, disturbing the

Chins' enjoyment of their leasehold and, inferentially, causing mental and physical distress.

These points are insufficient to raise a triable issue of fact as to the existence of a duty to defend. They establish at most that the Chins *could* have asserted a claim against plaintiffs based upon the contractors' activities. But it is undisputed that the Chins *did not* assert any such claim, and there is no basis to suppose that CCIC ever knew of any *potential* for such a claim. In their response to CCIC's motion for summary judgment, plaintiffs admitted as an undisputed fact that "[a]ll of the claims asserted by the Chins . . . were based upon the Chins' assertions that the SWAINS *wrongfully evicted them from the premises based upon representations* that the SWAINS would be occupying the premises as their residence." (Italics added.) Plaintiffs also conceded it to be undisputed that after CCIC denied coverage, plaintiffs "provided no further information" to CCIC. Accordingly, there is simply no basis to suppose that CCIC knew, had notice, or indeed had any way of learning, of any potential claims based on contractors' activities.

■ "[F]acts extrinsic to the allegations of the complaint may give rise to a duty to defend when they reveal a possibility that the claim may be covered by the terms of the insurance policy." (*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1113-1114 [44 Cal.Rptr.2d 272]; *Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th at p. 1081.) To trigger such a duty, however, "the extrinsic facts . . . must be *known by the insurer,*" if not "at the inception of the third party lawsuit," then "at the time of tender." (*Gunderson,* at p. 1114, some italics omitted; cf. *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 510, fn. 4 [108 Cal.Rptr.2d 657] [time of tender].) ■ The undisputed facts noted above establish, at a minimum, that no potential for a claim based on anything other than express, intentional eviction was known or knowable to CCIC at the time of tender, or indeed at any other relevant time.

Plaintiffs emphasize that, in contrast to the pleadings in *Gunderson,* the Chins' complaint here contained a cause of action for simple negligence. However, coverage turns not on "the technical legal cause of action pleaded by the third party" but on the "*facts* alleged in the underlying complaint" or otherwise known to the insurer. (*Barnett v. Fireman's Fund Ins. Co., supra,* 90 Cal.App.4th at p. 510, italics added.) A general boilerplate pleading of "negligence" adds nothing to a complaint otherwise devoid of *facts* giving rise to a potential for covered liability. (See *Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1107 [58 Cal.Rptr.2d 133], quoting the trial court [pleading of negligence did not alter coverage analysis where gravamen of claim was sexual harassment; " '[t]he pleading of alternative

legal theories of liability does not alter the nature of the conduct which forms the basis for the complaint.' "].)

To the extent the Chins' cause of action for negligence was not merely a boilerplate pleading, it rested on the same facts alleged elsewhere in the complaint and admitted by plaintiffs to be the sole basis for the pleading, i.e., plaintiffs' "ownership and management of the subject premises," and their observance, or failure to observe, the Chins' "rights as tenants, specifically including, but not limited to [those under] . . . Berkeley's Rent Stabilization Ordinance."

In sum, the negligence claim contains no hint of a grievance based on contractors' activities. That the Chins might have been able to assert such a claim could not raise a triable issue of fact with respect to potential coverage because there was no basis to infer that CCIC knew or should have known any facts suggesting such a possibility.

Plaintiffs argued below, and again suggest on appeal, that their eviction of the Chins itself could have constituted an "accident" because it "only became illegal after the fact when the Swains failed to move into the premises themselves." Plaintiffs contend that this distinguishes the Chins' claims from claims based on wrongful termination of employment, which have consistently been held nonaccidental for purposes of policy language such as that before us. (E.g., *Commercial Union Ins. Co. v. Superior Court* (1987) 196 Cal.App.3d 1205, 1209 [242 Cal.Rptr. 454] ["An intentional termination is not an 'occurrence' under the policy because it is not an accident."]; *Dyer v. Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547 [259 Cal.Rptr. 298] [same]; *United Pacific Ins. Co. v. McGuire Co.* (1991) 229 Cal.App.3d 1560, 1564 [281 Cal.Rptr. 375] [same].) We fail to see any meaningful basis to reach a result here different from those in the wrongful termination cases. In both situations the insured's conduct, whether lawful or not, inflicts an obvious harm to an important interest—the claimant's interest in a leasehold, a place of shelter, a home, or in an employment contract, a job, a livelihood. The insured may believe that he or she is lawfully entitled to inflict such harm, but at least in the present setting such a belief seems beside the point. The harm is obvious, it is substantially certain to occur, and in the eyes of the law, it is intentional.

Nor is it an "accident" in common speech when an employer intentionally fires a worker, or a landlord evicts a tenant, whether or not the actor believes himself entitled to do so. To be sure, we can imagine an arguably "accidental" firing where, e.g., the employer intends to discharge John Doe but, through miscommunication, fires Don Joe instead. Similarly a landlord's

agent might "accidentally" serve a notice to quit on the wrong tenant. Those facts are not before us, of course, and we express no opinion as to whether they would be covered by the policy language at issue. We mention them only to illustrate a sense in which the common meaning of "accident" might apply, as it does not here, to the formal termination of a legal relationship.

We know of no case from this or any other jurisdiction where a harm knowingly and purposefully inflicted was held "accidental" merely because the person inflicting it erroneously believed himself entitled to do so. We decline plaintiffs' implicit invitation to expand the scope of liability for an "occurrence" to such an uncertain but presumably dramatic extent. The only question before CCIC was whether plaintiffs intentionally caused the termination of the Chins' tenancy. Since there was no dispute on that issue, there was no triable issue of fact as to coverage.[1]

## DISPOSITION

The judgment is modified, nunc pro tunc to the date of the trial court's order granting summary judgment, to provide that plaintiffs take nothing, that the main action be dismissed, and that cross-complainant CCIC have and take judgment on its cross-complaint by way of a declaration that it is not obligated by its policy to defend or indemnify plaintiffs in connection with the claims at issue in this matter. As so modified, the judgment is affirmed.

Reardon, Acting P. J., and Rivera, J., concurred.

---

[1]This conclusion makes it unnecessary to reach other questions raised by defendant, notably whether any duty it had to defend plaintiffs was discharged when another insurer appeared and presented a defense on their behalf.